**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONALD EUGENE CHALUPA also
known as Donald William Chaupa,
also known as "Hoss" Chalupa, also
known as Donald E.W. Chalupa,

Defendant - Appellant.

No. 05-4157
(D. Utah)
(D.Ct. No. 2:03-CR-706-PGC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R.
32.1 (eff. Jan. 1, 2007).

On May 13, 2005, Donald Chalupa was charged with violating his supervised release based on (1) his arrest for driving under the influence of alcohol (DUI) and driving with an expired registration, (2) his consumption of alcohol, and (3) his failure to submit to drug testing. After Chalupa admitted to all three allegations, the district court revoked his supervised release and sentenced him to eight months imprisonment followed by twenty-eight months of supervised release. On appeal, Chalupa claims the district court improperly considered his unadjudicated DUI arrest as a basis for revoking his supervised release and imposing sentence. He also contends the district court's written order erroneously added a condition on his sentence that was not included in the oral pronouncement of sentence. Exercising jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we AFFIRM.

Background

After serving a thirty-five month sentence of imprisonment for possession of a firearm by a convicted felon, Chalupa was placed on supervised release for a period of thirty-six months. In June, 2004, Chalupa was charged with violations of the terms of his supervised release, including absconding from supervision and failure to submit to drug and alcohol testing. The district court did not re-imprison Chalupa, but reinstated the remaining balance of his supervised release with the special condition that he "participate . . . in a program of substance abuse treatment which may include testing for substance abuse and contribute to the

-2-

cost of treatment in an amount to be determined by the [United States Probation Office]." (R. Supp. Vol. I, Doc. 14 at 2.) The court also ordered Chalupa to "abstain from all use of alcohol or alcoholic beverages." (*Id.*)

Less than one year later, Chalupa was again charged with violating the terms of his supervised release. The allegations included his arrest by the Utah Highway Patrol for DUI and expired registration, his admission to law enforcement officers that he had consumed alcohol, and his failure to submit to scheduled drug testing on three different occasions. The presentence report further indicated "the defendant failed to notify the United States Probation Office of [the DUI] arrest immediately following his release from jail . . . ." (R. Vol. III at 2.) At sentencing, Chalupa admitted to all three allegations but insisted there were legitimate reasons for his failure to report for the drug testings. He also asserted he had sent the DUI paperwork to his probation officer the day after his arrest.

The presentence report determined each allegation constituted a Grade C violation. With a criminal history category of III, the report calculated the guideline range as five to eleven months imprisonment. Chalupa requested that the court sentence him to eleven months imprisonment and terminate any supervised release. The district court denied his request, finding "the best way [for Chalupa] to move on with [his] life is to comply with the conditions [of supervised release]." (Vol. II at 8.) The district court then sentenced Chalupa to

eight months imprisonment followed by twenty-eight months supervised release. In addition to the standard conditions of supervised release, the district court orally ordered Chalupa to "submit to drug and/or alcohol testing" and "participate in drug and/or alcohol abuse treatment as directed by the probation office." (*Id.* at 9.) However, in the written order, the district court stated "[t]he defendant will submit to drug/alcohol testing, as directed by the probation office, and pay a one-time $115 fee to partially defer the costs of collection and testing[.]" (Vol. I, Doc. 23 at 2.) Chalupa appeals from this sentence.

Discussion

Chalupa raises two issues on appeal. First, he contends the district court erred in considering his DUI arrest as a basis for revoking his supervised release and at sentencing. Second, he maintains the requirement that he pay $115.00 to offset the costs of drug testing was not part of the district court's oral pronouncement and therefore should be stricken from the written sentencing order. We address each argument in turn.

1.    Consideration of Arrest as a Supervised Release Violation

Chalupa did not object to the court's consideration of his arrest at the revocation hearing. Therefore, we review for plain error. *United States v. Mitchell*, 429 F.3d 952, 961 (10th Cir. 2005). "Under the plain error test, there must be (1) an error (2) that is plain and (3) that affects substantial rights. Even if all three elements are present, we may exercise discretion to notice the forfeited

error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Crockett*, 435 F.3d 1305, 1312 (10th Cir. 2006) (citations omitted).

On appeal, Chalupa posits that the fact he was arrested did not violate any condition of his supervised release. In addition, the mere fact of an arrest is generally not considered probative as to whether the underlying act occurred. *United States v. Robinson*, 978 F.2d 1554, 1559 (10th Cir. 1992); *see also Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty."); *United States v. Pino*, 827 F.2d 1429, 1431 (10th Cir. 1987) (same). While Chalupa concedes he violated other conditions of his supervised release, he contends the error in considering his DUI arrest as a violation is plain error because it was "so serious in comparison to the other violations" that "it is almost a certainty [it] had an effect on [his] sentence." (Appellant's Op. Br. at 5.) Therefore, he argues we must remand his case for resentencing. *See United States v. Curtis*, 237 F.3d 598, 604 (6th Cir. 2001) (when charges of supervised release violations may have been improperly reinstated, remand was required when it was not clear what role the reinstated charges played in the sentence).

The government admits Chalupa's arrest, by itself, was not a violation of his supervised release conditions but maintains it is unclear whether the district

court determined Chalupa violated his supervised release based on his arrest or a violation based on his failure to report it. *See* USSG §5D1.3(c)(11). A careful review of the record, however, reveals that a failure to report the arrest was never included in the allegations providing the basis for revocation. In addition, the written order of the court observes that Chalupa admitted to each *allegation*. Because the district court apparently found Chalupa guilty of all three allegations and the first allegation was not a violation of his supervised release, we find the court erred and the error was plain.

"Satisfying the third prong of plain-error review - that the error affects substantial rights - usually means that the error must have affected the outcome of the district court proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir.) (quotations omitted) (*en banc*), *cert. denied*, 126 S.Ct. 795 (2005). We need not determine whether Chalupa can satisfy this burden by merely claiming that the removal of the allegation *might* have changed his sentence "because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief." *Id*. at 736. Chalupa fails to do so.

"Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. We will notice a non-constitutional error only when the defendant demonstrates the error is "particularly egregious" and a failure to correct it would result in "a miscarriage

of justice." *Id*. (quotations omitted). In his brief on appeal, Chalupa makes no effort to argue either prong of this dual standard. Moreover, the uncontradicted facts establish the admitted allegations were Grade C violations. Under USSG §7B1.4, one Grade C violation (coupled with Chalupa's criminal history category of III), by itself, would result in the same recommended term of imprisonment — five to eleven months. Because Chalupa admitted to two legitimate Grade C violations, his sentence is well "within th[e] national norm." *Id*. at 738. Since "there is no record evidence to support a lower sentence," we conclude Chalupa has not shown his "sentence is particularly egregious or a miscarriage of justice." *Id*. at 738-39. Accordingly, we decline to remand this case for resentencing.

2. Discrepancies Between the Oral and Written Judgment

Chalupa contends the requirement to pay $115.00 to defray the costs of drug/alcohol testing contained in the district court's written order conflicts with the district court's silence on this condition at his sentencing hearing. Generally, we review the conditions of supervised release for an abuse of discretion, even absent an objection at the hearing, when the defendant was not provided an adequate opportunity to object. *United States v. Bartsma*, 198 F.3d 1191, 1197-98 (10th Cir. 1999). In this case, however, the district court's discretionary authority is preceded by a question of law. "It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict." *United States v.*

*Villano*, 816 F.2d 1448, 1450 (10th Cir. 1987) (en banc). It is only when "an orally pronounced sentence is ambiguous [that] the judgment and commitment order is evidence which may be used to determine the intended sentence." *Id*. at 1451. Thus, our initial inquiry is whether a the oral judgment is ambiguous or whether it conflicts with the written judgment, a legal question on which we undertake plenary review. *See United States v. Wolfe,* 435 F.3d 1289, 1297 (10th Cir. 2006) (discussing plenary review and review for abuse of discretion as applied to separate issues.)

The government points to cases from other circuits that expressly hold the failure to include the payment of the costs of drug testing and treatment in the oral pronouncement does not conflict with the written order's requirement to do so. *See United States v. Vega*, 332 F.3d 849, 852 (5th Cir. 2003); *United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002); *United States v. Bull*, 214 F.3d 1275, 1279 (11th Cir. 2000). The reasoning of these courts is that the obligation to pay for substance testing and treatment is consistent with the court's order to participate in such testing and treatment. *Bull*, 214 F.3d at 1279. In the alternative, these courts have concluded that the omission of the payment for treatment or testing in the oral pronouncement as compared to the written order creates an ambiguity, allowing consideration of the written judgment to "ascertain the court's intention." *Id*. (quotations omitted).

Our case law suggests a different approach. In *Villano*, the defendant and

-8-

two co-defendants were sentenced on three counts by the same federal judge on the same day. When sentencing Villano's co-defendants, the court ordered the sentences on each count to run consecutively. When sentencing Villano, however, the district court mistakenly stated only two of the counts would run consecutively, unlike the sentence imposed upon his co-defendants. Because the court's silence on the third count raised the presumption it would run concurrent with his other two sentences, Villano's oral sentence totaled eight years. In contrast, the written judgment stated Villano's sentence was ten years, identical to that of his co-defendants. On appeal, he argued his sentence should be reduced to reflect the court's oral pronouncement. We agreed, even though the district court clearly stated he intended to sentence Villano to ten years. We stated, "[b]ecause there [was] no ambiguity in [the oral judgment] and there [was] a conflict between the oral sentence and the written judgment, . . . the oral sentence controls." *Villano*, 816 F.2d at 1451.

In so holding, we rejected the argument that the presence of a conflict initiates an "attempt to discern the sentencing judge's intentions." *Id*. An intent-based approach would dilute the principles that underlie the traditional rules — the defendant's right to be present at sentencing. *Id*. In other words, an unambiguous oral sentence will stand despite the intent of the sentencing court as set forth in the written judgment.

"[T]he law continues to be that the legally effective sentence is the oral

sentence" and "the true function of the written document is to help clarify an ambiguous oral sentence by providing evidence of what was stated." *Id.* at 1452 (emphasis added). The *en banc Villano* decision included three concurring opinions which raised the difficulties inherent in the many forms ambiguity can take, specifically, judicial silence. *Id.* at 1454 (McKay, J., concurring) ("The majority opinion noticeably omits silence from its list of ambiguities."); *Id.* at 1458 (Logan, J., concurring) ("What if the orally pronounced sentence is silent or ambiguous on an important matter?"); *Id.* at 1460 (Anderson, J., concurring) (relying on his dissent in *United States v. Earley*, 816 F.2d 1428, 1443 (10th Cir. 1987) ("I see no difference between ambiguous silence and ambiguous words.")).

In this instance, Chalupa's prior supervised release required he "contribute to the cost of treatment . . . which may include testing for substance abuse." (R. Supp. Vol I, Doc. 14 at 2.) During the oral disposition of his current violation of conditional release, after hearing arguments on Chalupa's request for termination of supervised release after imprisonment, the district court stated his inclination was to "*continue* the supervision with the conditions that are recommended [in the presentence report]." (R. Vol. II at 8.) The recommendation in the presentence report stated: "If *supervised release* is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may . . . be ordered to *recommence* supervised release . . . ." (R. Vol. III at 5.) Chalupa was aware of his previous requirement to

-10-

contribute to costs.  Thus, at most, the differences between the district court's oral and written pronouncements create an ambiguity clarified by the written judgment.  Accordingly, we AFFIRM the district court's judgment and sentence.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge